

JUDGE DAVID BRIONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

BRANDON CALLIER,

§
§
§

                    Plaintiff,

§
§

          v.

§
§

CALIBER HOME LOANS, INC. a Delaware
Corporation

§
§
§

                    Defendants.

§
§
§

EP22CV0049

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.     The Plaintiff is BRANDON CALLIER ("Plaintiff") a natural person, resident of the

Western District of Texas, and was present in Texas for all calls, in this case in El Paso County,

Texas.

2.     Defendant CALIBER HOME LOANS, INC. ("Caliber") is a corporation organized and

existing under the laws of Delaware with a principal address at 1525 S Belt Line Road, Coppell,

Texas 75019 and can be served via registered agent CT CORP SYSTEM at 1999 Bryan Street

Suite 900, Dallas, Texas 75201.

### JURISDICTION AND VENUE

3.     Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter

jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101

1

because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

4.     Personal Jurisdiction.  This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.  Defendant has a principal place of business in the State of Texas.

5.     Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

6.     This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

7.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number

2

assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9.      The TCPA makes it unlawful "to initiate any telephone call to any residential telephone

line using an artificial or prerecorded voice to deliver a message without the prior express

consent of the called party, unless the call is initiated for emergency purposes, is made solely

pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted

by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. §

227(b)(1)(B).

10.     The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(b). 47 U.S.C. § 227(b)(3).

11.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available

upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12.     The TCPA provides a private cause of action to persons who receive calls in violation of

§ 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13.     According to findings of the FCC, the agency vested by Congress with authority to issue

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14.     The FCC also recognizes that "wireless customers are charged for incoming calls whether

they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15.     The FCC requires "prior express written consent" for all autodialed or prerecorded

telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017)
(codifying a June 26, 2003 FCC order).

written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16.      *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17.      The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18.      Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19.      A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal

4

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

20.    Plaintiff has been on the National Do-Not-Call Registry since December 2007.

21.    Through information and belief the Defendant uses an anonymous telemarketing company to make phone calls on its behalf soliciting mortgage refinancing.

22.    Caliber is a serial TCPA violator that has settled multiple class action lawsuits. Caliber is aware of the requirements under the TCPA and actively and consciously rejects those requirements. Caliber knowingly and willfully violates the TCPA.

23.    Plaintiff received at least 32 calls within a 60-day timespan from telemarketers calling on behalf of Defendant Caliber.

24.    Plaintiff answered phone calls that came from anonymous telemarketers who asked Plaintiff questions about his mortgage balance, interest rate, monthly payment, taxes, income and credit score, and then transferred Plaintiff to Caliber Homes representatives.

25.    Plaintiff also fielded calls directly form Caliber agents and/or employees who received Plaintiff's contact information from the anonymous telemarketers.

26.    Defendant Caliber employs, contracts, or authorizes telemarketing firms to make phone calls on their behalf. These telemarketers use various spoofed caller IDs and knowingly and willfully ignores Do Not Call lists in the marketing of services on behalf Caliber.

27.    On January 15, 2022, Plaintiff sent a written internal Do-Not-Call Policy request to Defendant.

28.    Defendant did not send Plaintiff a copy of their internal DNC policy.

29.    Table below displays calls made to Plaintiff by Defendant.

TABLE A

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1 | 12/16/2021 | 1:59 PM | 804-223-8146 | Non-working spoofed number - Telemarketer |
| 2 | 01/03/2022 | 5:26 PM | 772-247-3521 | Non-working spoofed number - Telemarketer |
| 3 | 01/03/2022 | 5:29 PM | 804-223-8146 | Non-working spoofed number - Telemarkerter |
| 4 | 01/04/2022 | 11:09 AM | 970-296-9430 | Non-working spoofed number – transferred to a Caliber agent |
| 5 | 01/04/2022 | 5:14 PM | 972-798-5420 | Direct Caliber Sales Call |
| 6 | 01/05/2022 | 8:52 AM | 972-798-5420 | Direct Caliber Sales Call |
| 7 | 01/05/2022 | 2:20 PM | 772-247-3521 | Non-working spoofed number – Telemarketer |
| 8 | 01/05/2022 | 5:17 PM | 972-798-5420 | Direct Caliber Sales Call |
| 9 | 01/06/2022 | 1:24 PM | 972-798-5420 | Direct Caliber Sales Call |
| 10 | 01/06/2022 | 1:25 PM | 972-798-5420 | Direct Caliber Sales Call |
| 11 | 01/08/2022 | 11:57 AM | 972-798-5420 | Direct Caliber Sales Call |
| 12 | 01/10/2022 | 1:55 PM | 469-820-8863 | Direct Caliber Sales Call |
| 13 | 01/10/2022 | 2:35 PM | 469-820-8448 | Direct Caliber Sales Call |
| 14 | 01/10/2022 | 2:38 PM | 972-798-5439 | Direct Caliber Sales Call |
| 15 | 01/10/2022 | 4:19 PM | 972-798-5439 | Direct Caliber Sales Call |
| 16 | 01/11/2022 | 3:26 PM | 975-798-5420 | Direct Caliber Sales Call |
| 17 | 01/20/2022 | 12:12 PM | 972-798-5420 | Direct Caliber Sales Call |
| 18 | 01/20/2022 | 12:13 PM | 972-798-5420 | Direct Caliber Sales Call |

| 19 | 01/20/2022 | 5:01 PM | 804-223-8620 | Telemarketer – transferred to a Caliber agent |
| 20 | 02/01/2022 | 5:52 PM | 972-798-5420 | Direct Caliber Sales Call |
| 21 | 02/01/2022 | 5:53 PM | 972-798-5420 | Direct Caliber Sales Call |
| 22 | 02/02/2022 | 8:20 AM | 972-798-5420 | Direct Caliber Sales Call |
| 23 | 02/02/2022 | 8:21 AM | 972-798-5420 | Direct Caliber Sales Call |
| 24 | 02/02/2022 | 10:11 AM | 804-223-8146 | Telemarketer – transferred to a Caliber agent |
| 25 | 02/02/2022 | 12:27 PM | 972-798-5477 | Direct Caliber Sales Call |
| 26 | 02/02/2022 | 2:16 PM | 972-798-5477 | Direct Caliber Sales Call |
| 27 | 02/04/2022 | 11:08 PM | 772-247-3521 | Telemarketer – transferred to a Caliber agent |
| 28 | 02/04/2022 | 11:15 AM | 469-758-2885 | Direct Caliber Sales Call |
| 29 | 02/04/2022 | 11:16 AM | 804-223-8146 | Telemarketer – transferred to a Caliber agent |
| 30 | 02/04/2022 | 4:36 PM | 469-758-2891 | Caliber called 5 seconds later |
| 31 | 02/04/2022 | 4:36 PM | 469-758-2891 | Caliber called 5 seconds later |
| 32 | 02/04/2022 | 4:37 PM | 469-758-2891 | Told agent to never to call back |

30.    Defendants initiated numerous unsolicited telephone calls, made unlawful telemarketing sales pitches regarding mortgage refinancing.

31.    Each and every call was placed while knowingly ignoring the national do-not-call registry.  Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy

32.    Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

7

33.    No emergency necessitated the calls.

34.    On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

35.    Defendants' calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

36.    Defendants' calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

37.    Defendants' calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

38.    Plaintiff has been harmed, injured, and damages by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

## The Plaintiff's cell phone is a residential number

39.    The calls were to  the Plaintiff's cellular phone 4604 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**Violations of the Texas Business and Commerce Code 305.053**

40.    The actions of the Defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the Defendant violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

41.    The calls by the Defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## I.    FIRST CLAIM FOR RELIEF

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

1.    Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.    Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

3.    Plaintiff was statutorily damaged at least thirty-two (32) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telephone calls described above, in the amount of $500 per call.

4.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## II.  SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

1.    Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

        a.      a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

        b.      training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2); [3] and,

        c.      in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4). [4]

3.      Mr. Callier is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4.      Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5.      Mr. Callier also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 − 26 (codifying a June 26, 2003 FCC order).

### III. THIRD CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Cellular Telephones, 47 C.F.R. § 227(b)(1)(A)**
2.

1.      Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone without his prior express written consent.

3.      Mr. Callier is entitled to an award of at least $500 in damages for each violation of 47 U.S.C. § 227(b)(3)(B).

4.      Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

### IV.      FOURTH CLAIM FOR RELIEF:

### Violations of The Texas Business and Commerce Code 305.053

1.      Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Callier's cellular telephone numbers without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

11

3.      Mr. Callier is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

4.      Mr. Callier is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c).**

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1500 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for 32 calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.      An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.      An award to Mr. Callier of interest, costs and attorneys' fees, as allowed by law and equity

H.      Such further relief as the Court deems necessary, just, and proper.

February 7, 2022                              Respectfully submitted,

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com